# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RADAR INDUSTRIES, INC.,

    Plaintiff,

v.

Case No. 08-12338
Hon. Lawrence P. Zatkoff

CLEVELAND DIE &
MANUFACTURING COMPANY and
CLEVELAND DIE OF MEXICO,

    Defendants.
_____/

## **OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 4, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment Re: Marking [dkt 42]. The motion has been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1 (e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons, Defendants' motion is GRANTED.

## II. BACKGROUND

This matter involves the alleged infringement by Defendants of patents owned by Plaintiff, United States Patent Nos. 5,435,661 ("'661 Patent") and 5,559,810 ("'810 Patent"). The patents

relate to products referred to as "clevis links." In 1993, Radar Industries, Inc. ("Plaintiff") developed an improved version of a clevis link, which is used in a variety of manufacturing capacities. In that same year, Plaintiff's current Vice President and owner, Mark Zmyslowski, filed an application with the United States Patent and Trademark Office ("PTO") to protect its version of the clevis link. Plaintiff's clevis link differed from prior models because it could be produced from stamped sheet metal, resulting in a more economical and lightweight link.

While Plaintiff's application for the '661 Patent was still pending, Plaintiff offered to allow Standard Products of Canada ("Standard Products") to sell its clevis link, along with the clevis link's "mating tie bar bracket." The anticipated sales from the mating tie bar bracket were far more profitable to Plaintiff than those from the clevis link. In considering Plaintiff's offer, Standard Products wanted a company named Tool Producers to produce and supply the clevis links. Plaintiff would then receive a purchase order for the production of the mating tie bar bracket, which Plaintiff produced. The companies ultimately entered into an arrangement whereby Plaintiff granted Standard Products a "Right to Have Made" the clevis links in exchange for Standard Products' assurance that if Tool Producers ever stopped manufacturing the clevis links, Plaintiff would be offered the first opportunity to replace Tool Producers. Mr. Zmyslowski, on behalf of Plaintiff, negotiated the terms of the agreement with Standard Products' buyer, Gary O'Keefe. On or around April 14, 1994, Tool Producers began providing Standard Products with the accused clevis links while Plaintiff produced and provided the mating tie bar bracket to Standard Products.

On July 25, 1995, the PTO issued to Plaintiff patent number 5,435,661 ("'661 Patent"), entitled "Clevis Link." On March 30, 1996, Standard Products wrote a letter to Tool Producers in which Standard Products compared the clevis link that Tool Producers was manufacturing to the

clevis link described in Plaintiff's patent. The letter concluded that "although [Plaintiff] does have a valid patent for their clevis link none of their claims apply to the Tool Producers part. There is actually very little in common between the 2 parts with the exception of the intended function." On January 4, 1997, the PTO issued to Plaintiff patent number 5,559,810 ("'810 Patent"), which was also entitled "Clevis Link." Both the '661 Patent and the '810 Patent are apparently part of a "patent family" that includes United States Patent No. 5,533,328 ("'328 Patent"). However, only the '661 Patent and the '810 Patent are at issue in this case. Neither Standard Products nor Tool Producers marked the clevis links with the patent numbers before sale.

In June 2001, Defendant Cleveland Die[1] purchased the assets of Tool Producers from National City Bank, who had foreclosed on its security interests in Tool Producers. The following year, Defendants began producing clevis links for the successor company of Standard Products—Cooper Standard. Defendants ceased production of the accused clevis links when Cooper Standard found another source for the links on or about July 26, 2007. In 2008, Plaintiff lost the privilege of providing the mating tie bar bracket to Cooper Standard. At that time, Plaintiff discovered that Tool Producers was no longer producing the clevis links and that Defendants had been providing stamped clevis links to Cooper Standard, in alleged violation of the Right to Have Made agreement. Plaintiff brought this suit to enforce its patent rights against Defendants, alleging patent infringement and seeking damages and injunctive relief. In their present motion, Defendants aver that Plaintiff is precluded from recovering damages for Defendants' alleged infringement because the clevis links that Standard Products sold on Plaintiff's behalf were not marked with

---

[1] Defendant Cleveland Die of Mexico is a subsidiary of Cleveland Die. From this point forward in this Opinion and Order, the Court will reference "Defendants."

Plaintiff's patent numbers.

## III.  LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none.  The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

35 U.S.C. § 287(a) places a duty on patentees to mark their patented articles with the appropriate patent numbers.  Section 287 serves three related purposes: (1) it helps to avoid innocent infringement; (2) it encourages patentees to give notice to the public that an article is patented; and (3) it aides the public in identifying whether an article is patented. *See Nike, Inc. v Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998) (citations omitted). The failure to mark may limit a patentee's ability to recover damages against others who make or sell infringing articles:

4

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a). As stated in § 287(a), the obligation to mark extends to persons who make or sell patented articles "for or under" the patentee, and the failure to mark on the part of such persons precludes the patentee from recovering damages for infringement by third parties. *See Amsted Ind's Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994) (stating that "[a] licensee who makes or sells a patented article does so 'for or under' the patentee, thereby limiting the patentee's damage recovery when the patented article is not marked."). Persons make or sell patented articles "for or under" a patentee when the patentee has expressly or impliedly authorized them to do so. *See id.* (holding that a customer sold patented articles for or under the patentee when the patentee "impliedly authorized its customers to make, use, and sell [its] patented article"). *See also In re Yarn Processing*, 602 F.Supp. 159, 169 (W.D.N.C. 1984) ("Section 287 . . . thus applies to authorizations by the patentee to make and sell patented articles regardless of the particular form these authorizations may take and regardless of whether the authorizations are 'settlement agreements,' 'covenants not to sue' or 'licenses.'").

However, a patentee's failure to mark does not preclude it from recovering damages for infringement where the alleged infringer was "notified of the infringement and continued to infringe

thereafter." 35 U.S.C. § 287(a). *See Amsted Ind's Inc.*, 24 F.3d at 185 (despite the patentee's failure to mark, Section 287(a) did not preclude the patentee from recovering damages for the period after which the alleged infringer was notified of the infringement). "For purposes of section 287(a), notice must be of 'the infringement,' not merely notice of the patent's existence or ownership. Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Ind's Inc.,* 24 F.3d at 187 (letter from a patent holder to an alleged infringer that gave notice of the patent and the patent holder's intention to enforce, but which did not include any specific charge of infringement, was insufficient notice of infringement to permit recovery of damages despite the absence of marking on the patented device). Furthermore, notice must be accomplished by an affirmative act on the part of the patentee, as opposed to a third party. *Id. See also Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327 (Fed. Cir. 2001) (stating that even "notice from someone closely associated with the patentee does not satisfy § 287(a)").

In this case, it is undisputed that Standard Products sold Plaintiff's patented clevis links without marking them with Plaintiff's patent numbers and that Plaintiff did not require Standard Products to do so. As a result, Defendants claim that Standard Products' failure to mark precludes Plaintiff from recovering damages for Defendants' alleged infringement. At issue is whether Standard Products sold clevis links "for or under" Plaintiff such that Standard Products' failure to mark the clevis links is attributable to Plaintiff, and whether Defendants were notified of the alleged infringement and continued to infringe thereafter.

**A. FOR OR UNDER**

Defendants argue that Standard Products sold Plaintiff's patented articles "for or under" Plaintiff, such that Standard Product's failure to mark the articles with Plaintiff's patent numbers

6

precludes Plaintiff from recovering damages for patent infringement. Defendants contend that Plaintiff entered into an agreement with Standard Products, wherein Plaintiff allowed Standard Products to sell its clevis links and dictate that Tool Producers produce the clevis links, so that Standard Products would submit purchase orders to Plaintiff for the more profitable mating tie bar brackets. In support of their argument that this agreement existed, Defendants first note that Plaintiff has maintained the position that this agreement existed prior to filing its present response brief. In March 2009, for example, Plaintiff stated in a response brief [dkt 24] that "[Plaintiff] offered its stamped clevis links covered by its patent application to Standard Products" and that "[u]ltimately, [Plaintiff] reached an agreement with Standard Products wherein [Plaintiff] granted to Standard Products a right to have made . . . the patented clevis links." Defendants also produce the deposition testimony of Plaintiff's Vice President and Rule 30(b)(6) designee, Mark Zmyslowski, who testified that the agreement existed and extended to each of the patents in suit:

> I agreed to allow them to run the clevis as designed, as long as the initial clevis link would only be run by Tool Producers and if for any reason Tool Producers either – either it ceased to be produced by Tool Producers or they wanted to pull the business from Tool Producers, that I would be able to run my – run the clevis link.
> Q. And that was agreed to by Mr. O'Keefe [Standard Products' buyer]?
> A. Yes.
>
> * * * *
>
> I allowed Standard Products to let Tool Producers produce the clevis links, period, for the – as I stated earlier.
> Q. Okay. And the reason you allowed that was because of the threat to pull the tie bar bracket business?
> A. Yes.
>
> * * * *

7

> Q. Okay, eventually you received two other – Radar received two other patents for the clevis link, is that correct?
> A. Yes.
> Q. Did you bring those to the attention of Standard Products or Mr. O'Keefe?
> A. I don't know.
> Q. Did you consider the agreement you had with Standard Products to extend to those two patents also?
> A. Yes.

Lastly, Defendants note that it is undisputed that this agreement was performed according to the terms described above. Tool Producers produced the patented clevis links, Standard Products sold the patented clevis links, Standard Products submitted purchase orders to Plaintiff for the mating tie bar brackets, and Plaintiff did not enforce its rights in the '661 and '810 Patents against Standard Products or Tool Producers. Regardless of the form of this agreement, *i.e.*, express license, implied license, or covenant not to sue, Defendants argue that Plaintiff nevertheless authorized Standard Products to sell its patented clevis links, meaning that Standard Products sold them for or under Plaintiff. Based on this evidence, the Court finds that Defendants have met their initial burden of establishing that a genuine issue of material fact does not exist as to whether Standard Products sold the patented clevis links for or under Plaintiff.

Plaintiff attempts to identify a genuine issue of material fact by arguing that, contrary to its prior belief and understanding, an agreement between itself and Standard Products never in fact existed, claiming that (1) a declaration from one of Standard Products' employees demonstrates that there was no meeting of the minds, (2) Defendants previously took the factual position in one of its reply briefs that proof of the agreement was lacking, and (3) Plaintiff's Vice President stated in a declaration filed with Plaintiff's present response that no agreement ever existed and that, if an agreement did exist, it only covered one of the patents in this suit. The Court will address each of

Plaintiff's arguments in turn.

### 1. *Meeting of the Minds*

Plaintiff is correct that Michigan law requires mutual assent, or a meeting of the minds, on all the essential terms in order for a valid contract to exist. *See DaimlerChrysler Corp. v. Wesco Distribution, Inc.*, 760 N.W.2d 828 (Mich. Ct. App. 2008). Whether a meeting of the minds has occurred is "judged by an objective standard, looking to the express words of the parties and their visible acts." *Sanchez v. Eagle Alloy, Inc.*, 658 N.W.2d 510 (Mich. Ct. App. 2003) (*vacated in part on other grounds*) (citing *Groulx v. Carlson*, 440 N.W.2d 644, 648 (1989)). "A meeting of the minds can be found from performance and acquiescence in that performance." *Sanchez*, 658 N.W.2d at 666 (noting that "Defendant's actions . . . belie its claim that a meeting of the minds on the material facts was not present").

In support of its current position, Plaintiff has produced an April 13, 2009, unsworn declaration from a Standard Products employee, Bernie Rice. In his unsworn declaration, Mr. Rice stated that "Standard Products made no assurance . . . that 'if Tool Producers ever ceased to manufacture the stamped clevis link for Standard Products that Radar would be offered the opportunity to provide the stamped clevis link designed and developed by Radar.'" However, the Court finds that this statement fails to create a genuine issue of material fact as to whether Standard Products sold clevis links for or under Plaintiff. As an initial matter, Plaintiff has not shown that the existence of a valid contract is needed to establish that Standard Products sold for or under Plaintiff. Under *Amsted Ind's Inc*. and *In re Yarn*, Defendants need only prove that Plaintiff expressly or impliedly authorized Standard Products to sell the patented clevis links. *See Amsted Ind's Inc.*, 24 F.3d at 185; *In re Yarn Processing*, 602 F.Supp. at 169. Also, since Mr. Rice's declaration is

9

unsworn, it is not entitled to evidentiary weight. *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 ("[A] court may not consider unsworn statements when ruling on a motion for summary judgment.").

Even if the Court were to consider Mr. Rice's declaration, the Court finds that is insignificant in light of other evidence. As Mr. Zmyslowski stated during his August 6, 2009, deposition, the alleged agreement between Plaintiff and Standard Products was negotiated between himself and Standard Products' buyer, Gary O'Keefe. Mr. Rice was in charge of engineering aspects of producing the clevis links and featured no role in the reaching the agreement. Plaintiff has also had possession of Mr. Rice's statement since April 14, 2009—more than three and one half months prior to Mr. Zmyslowski's August 6, 2009, deposition, where he repeatedly testified to the existence of an agreement between Plaintiff and Standard Products. Plaintiff now takes a factual position contrary to its prior factual assertions and declarations without any new evidence to justify such a change in position. Furthermore, Mr. Rice's declaration does not refute Defendants' assertion that Plaintiff agreed to allow Standard Products to sell its clevis links; it only refutes the agreement regarding Plaintiff's right to produce the clevis links in the event that Tool Producers ceased its production.

More importantly, the Court finds that Plaintiff and Standard Products' course of dealings belie its claim that a meeting of the minds was not present. In addition to Plaintiff's previous assertions that the agreement existed and Mr. Zmyslowski's deposition testimony confirming the agreement's existence, Plaintiff, Standard Products and Tool Producers all acted in accordance with the essential terms of the alleged agreement. Thus, the Court concludes that the declaration of Mr. Rice does not create a genuine issue of material fact as to whether Standard Products sold patented

articles for or under Plaintiff.

### 2. *Statement in Prior Reply Brief*

In Defendants' reply brief [dkt 30] in support of a prior motion for summary judgment [dkt 17], which the Court denied on June 11, 2009, Defendants stated "there is no proof of the agreement, merely hearsay." Despite Plaintiff's own change in factual position regarding the existence of the agreement between itself and Standard Products, Plaintiff argues that Defendants' apparent change of position should bar Defendants from arguing that an agreement ever existed. However, the Court finds that Defendants' prior statement is insufficient to create a genuine issue of material fact in light of the wealth of evidence showing that Plaintiff authorized Standard Products to sell Plaintiff's patented clevis links.

First, the Court notes that Defendants' prior statement was based on an apparent lack of evidence regarding the agreement, and that the statement was made nearly five months before the close of discovery. After Defendants made this statement, Mr. Zmyslowski repeatedly testified during his August 6, 2009, deposition that an agreement had existed between Plaintiff and Standard Products for the sale of Plaintiff's patented clevis links. While Defendants take a factual position different to that expressed in a single line in a prior reply brief, Defendants do so based on strong evidence that was produced after the initial statement was made. The Court finds that Plaintiff's hands are unclean in this regard, as it changed its factual position without any new evidence. Second, Defendants' reference to the "agreement" related to Plaintiff's agreement to allow Tool Producers to produce the clevis links, not Plaintiff's agreement to allow Standard Products to sell the clevis links. *See* Plaintiff's Resp. Br. [dkt 24] at 9 (discussing "[t]he agreement" in terms of Plaintiff's decision to allow Tool Producers to produce the clevis links). Third, the Court finds that

11

despite Defendants' prior statement, Plaintiff and Standard Products' course of dealings is overwhelming evidence that Plaintiff nevertheless authorized Standard Products to sell the patented clevis links. *See* discussion, *supra*. Thus, the prior statement in Defendants' reply brief [dkt 30] fails to create a genuine issue of material fact as to whether Plaintiff authorized Standard Products to sell its clevis links.

### 3. *Mr. Zmyslowski's Declaration*

Plaintiff next seeks to create a genuine issue of material fact through an unsworn declaration by Mr. Zmyslowski. In his unsworn declaration, signed over three weeks after Defendants filed their present motion for summary judgment, Mr. Zmyslowski states that although he once believed an agreement had been reached with Standard Products, Bernie Rice's statement, which he just learned of, proves that no agreement ever existed. Mr. Zmyslowski also states that even if there was an agreement, it would have only covered one of the patents in this suit.

The Court is not persuaded. Since Mr. Zmyslowski's declaration is unsworn, it is not entitled to evidentiary weight. *See Dole*, 942 F.2d at 968-69 ("[A] court may not consider unsworn statements when ruling on a motion for summary judgment."). Also, as previously discussed, Mr. Rice did not participate in the negotiations between Mr. Zmyslowski and Mr. O'Keefe, and Plaintiff and Standard Products nevertheless performed the agreement according to its terms. Furthermore, "a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986). Here, Mr. Zmyslowski's September 14, 2009, declaration contradicts his August 6, 2009, testimony, wherein he stated that (1) Plaintiff entered into an agreement with Standard Products, which authorized Standard Products to sell the clevis links, and

(2) that the agreement extended to Plaintiff's original patent for the clevis link (the '661 Patent), as well as the two other patents Plaintiff received for the clevis link (the '810 and '338 Patents). Additionally, Plaintiff's course of dealing with Standard Products belie Mr. Zmyslowski's assertion as Plaintiff continued to knowingly allow Standard Products to sells the clevis links after Plaintiff received each of its patents. Thus, the Court finds that Mr. Zmyslowski's declaration does not create a genuine issue of material fact as to whether Plaintiff authorized Standard Products to sell its clevis links or whether this authorization covered only one of the patents in suit.

### *4.   Conclusion*

For the reasons stated, the Court finds that there is no genuine issue of material fact that Plaintiff authorized Standard Products to sell clevis links falling within the claims of the '661 and '810 Patents. Therefore, since the clevis links were not marked with patent numbers, Plaintiff is precluded from recovering damages for Defendants' alleged infringement unless Defendants were notified of the infringement and continued to infringe thereafter.

### B.   NOTICE

Plaintiff contends that Defendants received actual notice of their infringement and continued to infringe thereafter, such that Plaintiff is not barred from recovering damages for infringement despite it failure to mark. In support of this argument, Plaintiff produces evidence that on March 30, 1996, Standard Products wrote a letter to Tool Producers, in which Standard Products compared the clevis link that Tool Producers was manufacturing to the clevis link described in the '661 Patent. The letter concluded that "although [Plaintiff] does have a valid patent for their clevis link none of their claims apply to the Tool Producers part. There is actually very little in common between the 2 parts with the exception of the intended function." Plaintiff argues that this letter gave actual

notice to Tool Producers that the clevis links it was producing infringed upon Plaintiff's patent, and that it also gave actual notice of the infringement to Defendants when they purchased the assets of Tool Producers in 2001. Defendants respond that this letter did not provide actual notice under Section 287(a), and that Defendants first received notice of the alleged infringement in February 2008, at which time they had already ceased their production of the accused clevis links.

The Court finds that this letter fails to show that Defendants had actual knowledge of the alleged infringement for several reasons. First, even if this letter notified Tool Producers and Defendants of the existence of Plaintiff's patents, mere notice of a patent's existence is insufficient. *See Amsted Ind's Inc.*, 24 F.3d at 187 ("For purposes of section 287(a), notice must be of 'the infringement,' not merely notice of the patent's existence or ownership . . . ."). Second, the letter did not inform Tool Producers that the clevis links it was producing infringed upon Plaintiff's patents; rather, the letter specifically stated that Plaintiff's patent claims did not apply to the clevis links produced by Tool Producers. *See id.* ("Actual notice requires the affirmative communication of a specific charge of infringement . . . ."). Third, since the letter was sent by Standard Products, the alleged notice of infringement was not accomplished by an affirmative act on the part of the patentee. *See Lans*, 252 F.3d at 1327 (even "notice from someone closely associated with the patentee does not satisfy § 287(a)"). Therefore, the Court concludes that this letter is insufficient to create a genuine issue of material fact as to whether Defendants had actual knowledge that they were infringing upon Plaintiff's patents and continued to infringe thereafter.

Prior to the discovery deadline, it was accepted by the parties that the only clevis links accused of infringing Plaintiff's patents consisted of those that Defendant produced for Cooper Standard in alleged violation of the Right to Have Made agreement, which Defendants stopped

14

producing in 2007. One day before the close of discovery, and one week before the dispositive motion deadline, Plaintiff claimed to have discovered evidence that Defendants produce clevis links beyond those produced for Cooper Standard, which allegedly infringe upon Plaintiff's patents. Plaintiff claims that Defendants have produced these clevis links after February 2008—the date on which Defendants admit to receiving actual notice of infringement—such that Section 287(a) would not bar its claims for damages as to these clevis links. However, on January 15, 2010, the Court denied Plaintiff's request to amend its complaint and extend discovery to add claims related to these "newly discovered" clevis links, finding that this evidence had been readily apparent to Plaintiff since the outset of this litigation. Therefore, the Court finds that this evidence is not relevant to Defendants' present motion as the only accused clevis links in this action are those that Defendants produced for Cooper Standard until 2007.

## C. INJUNCTIVE RELIEF

In addition to Plaintiff's request for damages for Defendants' alleged infringement, Plaintiff's complaint requests that Defendants be enjoined from further infringing upon Plaintiff's patents. However, since Defendants no longer produce the accused clevis links at issue in this case, Plaintiff's request for injunctive relief is denied as moot.

## V. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment Re: Marking is [dkt 42] GRANTED.

IT IS SO ORDERED.

                                            S/Lawrence P. Zatkoff
                                            LAWRENCE P. ZATKOFF
                                            UNITED STATES DISTRICT JUDGE

Dated: March 4, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 4, 2010.

                                            S/Marie E. Verlinde
                                            Case Manager
                                            (810) 984-3290