# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RADAR INDUSTRIES, INC.,

    Plaintiff,

v.

Case No. 08-12338
Hon. Lawrence P. Zatkoff

CLEVELAND DIE &
MANUFACTURING COMPANY and
CLEVELAND DIE OF MEXICO,

    Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 4, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendants' motion for attorney fees [dkt 77]. The motion has been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1 (f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons, Defendants' motion is denied.

## II. BACKGROUND

This matter involves the alleged infringement by Defendants of patents owned by Plaintiff, United States Patent Nos. 5,435,661 ("'661 Patent") and 5,559,810 ("'810 Patent"). The patents relate to products referred to as "clevis links." In 1993, Radar Industries, Inc. ("Plaintiff")

developed an improved version of a clevis link, which is used in a variety of manufacturing capacities. In that same year, Plaintiff's current Vice President and owner, Mark Zmyslowski, filed an application with the United States Patent and Trademark Office ("PTO") to protect its version of the clevis link. Plaintiff's clevis link differed from prior models because it could be produced from stamped sheet metal, resulting in a more economical and lightweight link.

While Plaintiff's application for the '661 Patent was still pending, Plaintiff offered to allow Standard Products of Canada ("Standard Products") to sell its clevis link, along with the clevis link's "mating tie bar bracket." The anticipated sales from the mating tie bar brackets were far more profitable to Plaintiff than those from the clevis links. In considering Plaintiff's offer, Standard Products wanted a company named Tool Producers to produce and supply the clevis links. Plaintiff would then receive purchase orders for the production of the mating tie bar brackets, which Plaintiff produced. The companies ultimately entered into an arrangement whereby Plaintiff granted Standard Products a "Right to Have Made" the clevis links in exchange for Standard Products's assurance that if Tool Producers ever stopped manufacturing the clevis links, Plaintiff would be offered the first opportunity to replace Tool Producers. On or around April 14, 1994, Tool Producers began providing Standard Products with the accused clevis links, while Plaintiff produced and provided the mating tie bar brackets to Standard Products.

On July 25, 1995, the PTO issued to Plaintiff the '661 Patent, entitled "Clevis Link." On January 4, 1997, the PTO issued to Plaintiff the '810 Patent, which was also entitled "Clevis Link." In June 2001, Defendant Cleveland Die[1] purchased the assets of Tool Producers from National City

---

[1] Defendant Cleveland Die of Mexico is a subsidiary of Defendant Cleveland Die (collectively, "Defendants").

Bank, who had foreclosed on its security interests in Tool Producers. The following year, Defendants began producing clevis links for the successor company of Standard Products—Cooper Standard. Defendants ceased production of the accused clevis links when Cooper Standard found another source for the links on or about July 26, 2007. In 2008, Plaintiff lost the privilege of providing the mating tie bar bracket to Cooper Standard. At that time, Plaintiff discovered that Tool Producers was no longer producing the clevis links and that Defendants had been providing stamped clevis links to Cooper Standard, in alleged violation of the Right to Have Made agreement.

Plaintiff brought this suit to enforce its patent rights against Defendants, alleging patent infringement. The Court granted Defendants' motion for summary judgment and dismissed each of Plaintiff's claims. Defendants' now seek attorney fees on the basis that this case is "exceptional" under 35 U.S.C. § 285.

### III. LEGAL STANDARD

In patent suits, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "The purpose of section 285 'is to provide discretion where it would be *grossly unjust* that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear.'" *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1364 (Fed. Cir. 1990) (quoting *J.P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047, 1052 (Fed. Cir. 1987) (emphasis in original)). "Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *Serio-US Indus. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321-22 (Fed. Cir. 2006) (citations omitted). "Absent misconduct in the litigation

3

or in securing the patent, a trial court may only sanction the patentee if both the litigation is brought in subjective bad faith and the litigation is objectively baseless." *Id.* at 1322 (citing *Professional Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 60-61 (1993)). The mere failure of a patentee's claim does not mean that a case is exceptional. *See Kao Corp. v. Unilever United States, Inc.*, 441 F.3d 963, 975 (Fed. Cir. 2006); *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1372 (Fed. Cir. 2003) ("Attorney fees are not to be routinely assessed against a losing party in litigation in order to avoid penalizing a party 'for merely defending or prosecuting a lawsuit.'") (citations omitted).

## IV. ANALYSIS

### A. Invalidity of '810 Patent

In one of its motions for summary judgment, Defendants argued that Plaintiff's claims based on the '810 patent should be dismissed because the '810 patent was invalid. Defendants argued that the '810 patent had an effective filing date of July 25, 1995, and that the accused clevis links were sold as early as April 14, 1994, thus invalidating the '810 patent as prior art. *See* 35 U.S.C. § 102(b) (stating a patent is invalid if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States").

Plaintiff responded that it had filed a certificate of correction with the PTO to correct a clerical error relating to the '810 patent's effective filing date, the result of which would give the '810 patent an effective filing date of February 16, 1993:

> [The PTO] may . . . issue a certificate of correction, if the correction does not involve such changes in the patent as would constitute new matter or would require re-examination. Such patent, together with the certificate, shall have the same effect and operation in law on the

4

> trial of actions for causes thereafter arising as if the same had been originally issued in such corrected form.

35 U.S.C. § 255.

The Court held that a certificate of correction would not validate the '810 patent in this case because a "certificate of correction is only effective for causes of action arising after it [i]s issued," whereas here, the cause of action arose before a certificate was issued. *Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1294 (Fed. Cir. 2000). However, the fact that Defendants prevailed on their argument does not mean that Plaintiff acted in bad faith in pursuing its argument. The language of 35 U.S.C. § 255 does not specifically address the issue decided by the Court, and the Court does not find that Plaintiff's attempt to apply the statute to the facts of this case constituted bad faith. Defendants rely on *Hughes v. Novi American, Inc.*, 724 F.2d 122 (Fed. Cir. 1983), in support of their assertion that this case is exceptional. In *Hughes*, the court affirmed an "exceptional" case determination where the plaintiff engaged in commercial sales and advertising of the patented device at issue as much as two years prior to filing applications for such patent. *Id.* However, the Court finds this case factually distinguishable, as there is no indication that the *Hughes* court also considered the potential retroactive effect of a petition for certificate of correction. Accordingly, the Court does not find that this case is exceptional based on Plaintiff's assertion of the '810 patent.

**B.      Failure to Mark**

Defendants next argue that this case is exceptional because Plaintiff's claims were baseless due to Plaintiff's failure to mark the clevis links with its patent numbers. 35 U.S.C. § 287 (a) places a duty on patentees to mark their patented articles with the appropriate patent numbers. The failure to mark may limit a patentee's ability to recover damages against others who make or sell

5

infringing articles. 35 U.S.C. § 287(a). The obligation to mark extends to persons who make or sell patented articles "for or under" the patentee, and the failure to mark on the part of such persons precludes the patentee from recovering damages for infringement by third parties. *See Amsted Ind's Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994). Persons make or sell patented articles "for or under" a patentee when the patentee has expressly or impliedly authorized them to do so. *See id.*

However, a patentee's failure to mark does not preclude it from recovering damages for infringement where the alleged infringer was "notified of the infringement and continued to infringe thereafter." 35 U.S.C. § 287(a). "For purposes of section 287(a), notice must be of 'the infringement,' not merely notice of the patent's existence or ownership. Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Ind's Inc.,* 24 F.3d at 187.

In this case, it was undisputed that Standard Products sold Plaintiff's patented clevis links without marking them with Plaintiff's patent numbers and that Plaintiff did not require Standard Products to do so. In another of Defendants' motions for summary judgment, Defendants claimed that Standard Products' failure to mark precluded Plaintiff from recovering damages for Defendants' alleged infringement. At issue was whether Standard Products sold clevis links "for or under" Plaintiff such that Standard Products's failure to mark the clevis links was attributable to Plaintiff, and whether Defendants were notified of the alleged infringement and continued to infringe thereafter.

### 1. *For or Under*

Defendants contended that Standard Products sold the clevis links for or under Plaintiff

because Plaintiff entered into an agreement with Standard Products, wherein Plaintiff allowed Standard Products to sell its clevis links and dictate that Tool Producers produce the clevis links, so that Standard Products would submit purchase orders to Plaintiff for the more profitable mating tie bar brackets. Plaintiff attempted to rebut Defendants' assertion by arguing that an agreement between itself and Standard Products never existed, and that if one did exist, it did not relate to the patents in suit. Plaintiff produced statements from a Standard Products employee purportedly indicating that there was no meeting of the minds between Standard Products and Plaintiff. Although the Court ultimately concluded that Plaintiff's evidence was worthy of little weight and insufficient to defeat Defendants' motion for summary judgment on this issue, evidence is lacking to support the claim that Plaintiff pursued its case in bad faith or that its claim was so baseless that this case should be deemed exceptional.

### 2. *Notice*

Plaintiff also contended that it had no to duty mark because Defendants received actual notice of their infringement and continued to infringe thereafter. In support of this argument, Plaintiff produced a March 30, 1996, letter from Standard Products to Tool Producers, which informed Tool Producers of Plaintiff's patents. The Court concluded that Plaintiff's evidence was insufficient to survive summary judgment because Plaintiff's purported notice failed to sufficiently notify Defendants' predecessor that it was *infringing* Plaintiff's patents. However, a lack of evidence exists upon which to find that Plaintiff's argument was made in bad faith or was so baseless that this case should be deemed exceptional.

### C.     **Cleveland Die of Mexico**

Defendants also argue that this case is exceptional because Plaintiff continued its suit against

7

Defendant Cleveland Die of Mexico after being informed that Defendant Cleveland Die of Mexico had nothing to do with the manufacture or sale of the clevis links at issue. Defendants filed a motion for partial summary judgment with respect to Plaintiff's claims against Defendant Cleveland Die of Mexico, but the Court did not consider the motion because the Court dismissed Plaintiff's claims on other grounds. Having rendered no decisions with respect to Defendant Cleveland Die of Mexico's involvement in this case, the Court declines to hold this case exceptional based on Plaintiff's refusal to dismiss its claims against such party.

## V. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' motion for attorney fees [dkt 77] is DENIED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: October 4, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on October 4, 2010.

S/Marie E. Verlinde
Case Manager
(810) 984-3290